No. 22-1017

## IN THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

KFC US, LLC,

*Defendant-Appellant,*

v.

ZUBAIR KAZI; KFC OF PUEBLO, INC.,

*Plaintiffs-Appellees.*

On Appeal from the United States District Court for the
District of Colorado, Denver
No. 1:19-cv-03300-RBJ
Hon. R. Brooke Jackson, U.S. District Judge

## DEFENDANT-APPELLANT'S REPLY BRIEF

Daniel J. Weiss
Clifford W. Berlow
Daniel W. Bobier
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
Telephone: (312) 923-4517
dweiss@jenner.com
cberlow@jenner.com
dbobier@jenner.com

*Attorneys for Defendant-Appellant
KFC US, LLC*

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................ii

INTRODUCTION ........................................................................ 1

ARGUMENT ............................................................................. 2

I.    Plaintiffs' Claim Fails As A Matter Of Kentucky Law. ............ 2

  A.  Even If Kentucky Permits Standalone Claims For Breach Of
      The Implied Covenant, Plaintiffs' Claim Fails........................ 3

      1. The Franchise Agreement Created No Objectively
         Reasonable Contractual Expectation Of The Type
         Plaintiffs Claim. ............................................... 4

      2. KFC Did Not Deprive Plaintiffs Of The Expectations
         They Claim To Have Had. ....................................... 9

      3. Plaintiffs Failed To Show That KFC Acted In Bad Faith .. 11

  B.  Kentucky Does Not Permit Standalone Claims For Breach Of
      The Implied Duty Of Good Faith And Fair Dealing.............. 15

  C.  The Jury Instructions Misstate Kentucky Law Regarding The
      Implied Covenant. .............................................. 21

II.   The District Court Awarded Damages For Lost Profits
      That Were Unsupported And Excessive. ............................ 22

  A.  Plaintiffs Misstate The Kentucky Standard For Future Lost
      Profits And Fail To Identify Evidence To Support Those
      Damages. ........................................................ 22

  B.  Plaintiffs Are Not Entitled To A Windfall. ............................ 26

III.  Commentary By The District Court Unfairly Prejudiced
      KFC................................................................ 28

CONCLUSION ........................................................................ 31

Certificate of Compliance With Type-Volume Limit, Typeface
      Requirements and Type Style Requirements........................ 32

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanta USA, Inc. v. Farmers Fertilizer Co.*,
　No. 2005-CA-000662, 2006 WL 1561489 (Ky. Ct. App.
　June 9, 2006)...........................................................................27

*Allstate Ins. Co. v. Hamm*,
　No. 17-CV-00049, 2020 WL 1431953 (E.D. Ky. Mar.
　23, 2020)................................................................................13

*Babcock Power, Inc. v. Kapsalis*,
　854 F. App'x 1 (6th Cir. 2021) .................................................23

*Bryman v. El Pollo Loco, Inc.*,
　No. MC026045, 2018 Cal. Super. LEXIS 8135 (Cal.
　Super. Ct. Aug. 1, 2018)..........................................................18

*Burger King Corp. v. Weaver*,
　169 F.3d 1310 (11th Cir. 1999) ................................................17

*Buridi v. Branch Banking & Tr. Co.*,
　No. 12-cv-00486, 2015 WL 13039576 (W.D. Ky. July
　14, 2015)..................................................................................8

*Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise
　Corp.*,
　139 F.3d 1396 (11th Cir. 1998) ..................................................6

*Chang v. McDonald's Corp.*,
　105 F.3d 664, 1996 WL 742455 (9th Cir. 1996) ......................7-8

*Clubspecialists Intl. LLC v. Keeneland Ass'n*,
　No. 16-CV-345, 2017 WL 522945 (E.D. Ky. Feb. 8,
　2017) ......................................................................................20

*Combs v. Int'l Ins. Co.*,
　163 F. Supp. 2d 686 (E.D. Ky. 2001).......................................12

*Comprehensive Care Corp. v. RehabCare Corp.*,
  98 F.3d 1063 (8th Cir. 1996) ...................................................... 3

*Cook v. Little Caesar Enters.*,
  210 F.3d 653 (6th Cir. 2000) ...................................................... 7

*Curry v. Bennett*,
  301 S.W.3d 502 (Ky. Ct. App. 2009) ......................................... 23

*Dunkin' Donuts Inc. v. N.A.S.T., Inc.*,
  428 F. Supp. 2d 761 (N.D. Ill. 2005) ......................................... 18

*Estate of Riddle ex rel. Riddle v. S. Farm Bureau Life Ins.*
  *Co.*,
  421 F.3d 400 (6th Cir. 2005) .................................................... 20

*Eureka Water Co. v. Nestle Waters N. Am., Inc.*,
  690 F.3d 1139 (10th Cir. 2012) .................................................. 2

*Frakes v. Specialized Loan Services, LLC*,
  No. 2017-CA-000671, 2018 WL 1358023 (Ky. Ct. App.
  Mar. 16, 2018) ........................................................... 16, 19, 20

*Gresh v. Waste Servs. of Am., Inc.*,
  311 F. App'x 766 (6th Cir. 2009) .............................................. 19

*Haberman v. The Hartford Ins. Grp.*,
  443 F.3d 1257 (10th Cir. 2006) .................................................. 2

*Handel's Enters., Inc. v. Schulenburg*,
  No. 18-CV-00508, 2020 WL 419158 (N.D. Ohio Jan.
  27, 2020).................................................................................. 8

*Hayes v. SkyWest Airlines, Inc.*,
  12 F.4th 1186 (10th Cir. 2021).......................................... 28, 30

*Ill. Valley Asphalt, Inc. v. Harry Berry, Inc.*,
  578 S.W.2d 244 (Ky. 1979)...................................................... 23

*Insight Ky. Partners II, L.P. v. Preferred Auto. Servs., Inc.*,
  514 S.W.3d 537 (Ky. Ct. App. 2016) ......................................... 22

*J.S. v. Berla,*
456 S.W.3d 19 (Ky. Ct. App. 2015) ..................................... 16, 20

*Jones v. Bank of Harlan,*
No. 2015-CA-001833, 2017 WL 1829731 (Ky. Ct. App.
May 5, 2017) ........................................................................... 6

*KSA Enters. v. Branch Banking & Tr. Co.,*
761 F. App'x 456 (6th Cir. 2019) .................................................. 3

*Ligon v. Parr,*
471 S.W.2d 1 (Ky. 1971) ............................................................. 7

*Louisville & N.R. Co. v. Lankford,*
200 S.W.2d 297 (Ky. Ct. App. 1947) ......................................... 26

*Mercedes-Benz, U.S.A. LLC v. Coast Auto. Grp., Ltd.,*
Civ. A. No. 99-3121, 2006 WL 2830962 (D.N.J. Sept.
29, 2006) ................................................................................ 17

*Middleton v. PNC Bank, NA,*
No. 2012-CA-002142, 2014 WL 5510872 (Ky. Ct. App.
Oct. 31, 2014) ....................................................................... 25

*Newman v. A. E. Staley Mfg. Co.,*
648 F.2d 330 (5th Cir. 1981) ............................................... 30-31

*O'Kentucky Rose B. Ltd. P'ship v. Burns,*
147 F. App'x 451 (6th Cir. 2005) ............................................... 19

*Old Henry Healthcare Real Est., LLC v. Jewish Hosp. & St.
Mary's Healthcare, Inc.,*
No. 2019-CA-0832, 2021 WL 4343468 (Ky. Ct. App.
Sept. 24, 2021) ......................................................................... 6

*Payne v. McDonald's Corp.,*
957 F. Supp. 749 (D. Md. 1997) ................................................. 8

*PBI Bank, Inc. v. Signature Point Condominiums LLC,*
535 S.W.3d 700 (Ky. Ct. App. 2016) ............................. 12, 18, 19

*Pearman v. W. Point Nat'l Bank*,
  887 S.W.2d 366 (Ky. Ct. App. 1994) ......................................... 12

*Protectors Ins. Serv., Inc. v. U.S. Fid. & Guar. Co.*,
  132 F.3d 612 (10th Cir. 1998) ................................................. 27

*Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*,
  No. 98-CI-003199, 2002 WL 33946402 (Ky. Cir. Ct.
  Feb. 14, 2002) ......................................................................... 15

*Rivermont Inn, Inc. v. Bass Hotels Resorts, Inc.*,
  113 S.W.3d 636 (Ky. Ct. App. 2003) ......................................... 13

*Robert R. Jones Assocs., Inc. v. Nino Homes*,
  858 F.2d 274 (6th Cir. 1988) .............................................. 27-28

*Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt.,
  LLC,*
  Civ. A. No. 11-374, 2014 WL 2113096 (E.D. Ky. May
  20, 2014) ................................................................................. 13

*Time Warner Cable Midwest LLC v. Pennyrile Rural Elec.
  Coop. Corp.*,
  No. 15-CV-45, 2015 WL 4464105 (W.D. Ky. July 21,
  2015) ....................................................................................... 20

*United States v. Basin Elec. Power Coop.*,
  248 F.3d 781 (8th Cir. 2001) ...................................................... 7

*In re Vylene Enterprises*,
  90 F.3d 1472 (9th Cir. 1996) ...................................................... 6

*Yates v. Bankers Life & Cas. Ins. Co.*,
  720 F. Supp. 2d 809 (W.D. Ky. 2010) ....................................... 20

**Other Authorities**

23 Williston on Contracts § 63.22 ............................................. 3, 7

Cal. R. Ct. 8.1115(a)...................................................................... 18

Order, *Dunkin' Donuts Franchised Rests. LLC v. Grand Cent. Donuts, Inc.*, No. 07-cv-04027 (E.D.N.Y. Jan. 5, 2011), ECF No. 97 .............. 17

Order, *Handlers-Bryman v. El Pollo Loco*, No. B292585 (Cal. Ct. App. Sept. 2, 2020) .................................................... 18

Order, *Mercedes-Benz, U.S.A. LLC v. Coast Auto. Grp., Ltd.*, Civ. A. No. 99-3121 (D.N.J. Sept. 23, 2008), ECF No. 222 ..................................................................................... 17

Order, *S. Implement Co. v. Deere & Co.*, No. 95-cv-00031 (E.D. Ark. Oct. 22, 1998), ECF No. 234 ..................................................................................... 17

**INTRODUCTION**

Judgment should have been entered for KFC because Plaintiffs can identify no *contractual* duty—express or implied—that KFC breached. The Franchise Agreement gives Plaintiffs a 1.5-mile exclusive license area and a right of first offer to operate new locations beyond that area. They received the benefit of those promises. The guidelines, which form the core of Plaintiffs' theory, are not contractual, as the District Court held and Plaintiffs did not appeal, and KFC did not depart from what they provide.

Plaintiffs' claim thus reduces to the theory that KFC applied the non-contractual guidelines in bad faith, because KFC relied in part on a third-party study Plaintiffs believe was poorly performed. Put simply, that theory lacks any meaningful nexus to a *contractual* obligation running from KFC to Plaintiffs. It thus cannot support a claim for breach of the implied contractual duty of good faith and fair dealing.

The Court thus should resolve this case in one of two ways. Either the Court should hold that KFC did not deprive Plaintiffs of any objectively reasonable contractual expectation. Or the Court should hold that Plaintiffs' claim is not actionable as a matter of

Kentucky law because they allege no concomitant breach of an express contractual provision. To the extent there is uncertainty on that latter point, the Court should certify the question to the Kentucky Supreme Court.

KFC has identified additional errors related to the jury instructions, the damages award, and inappropriate remarks the District Court made to the jury. But in the end, this case turns on fundamental principles of contract law. Based on a straightforward application of those principles, the Court should reverse the judgment entered by the District Court.[1]

## ARGUMENT

### I.    Plaintiffs' Claim Fails As A Matter Of Kentucky Law.

As KFC explained, Opening Br. 30-31, to prevent the implied covenant from being "an everflowing cornucopia of wished-for legal

---

[1] Plaintiffs in a footnote argue that orders denying motions to dismiss and for summary judgment are not appealable, Resp. Br. 18 n.3, but that is not true of rulings on "purely legal" questions, *Haberman v. The Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006). In any event, the point leads nowhere as Plaintiffs never argue wavier, and indeed no issue has been waived. *E.g.*, *Eureka Water Co. v. Nestle Waters N. Am., Inc.*, 690 F.3d 1139, 1155 (10th Cir. 2012) ("[A] defense of waiver may itself be waived if not raised.") (internal quotation marks and citation omitted).

duties," *Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996), the law limits implied covenant claims. The "majority" of jurisdictions do so by requiring that a claim "be tied to an alleged breach of a specific contract term, often one that allows for discretion on the part of the party alleged to have violated the duty." 23 Williston on Contracts § 63.22. Other jurisdictions do so by holding that though "it is not necessary for the defendant to have breached a specific provision of a contract," *id.*, such a claim only requires that the defendant "engaged in some conduct that denied *the benefit of the bargain originally intended.*" *KSA Enters. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 461 (6th Cir. 2019) (emphasis added).

Plaintiffs never deny their claim fails under the majority rule. They argue instead that Kentucky follows the minority rule, Resp. Br. 21-23, and that they prevail under the minority rule, *id.* at 35-42. They are wrong on both counts.

## A.    Even If Kentucky Permits Standalone Claims For Breach Of The Implied Covenant, Plaintiffs' Claim Fails.

Plaintiffs never dispute that in jurisdictions recognizing standalone claims, the implied covenant protects only "the objectively

3

reasonable expectations of the parties at the time of contracting." Opening Br. 32 (internal quotations and citations omitted). But when they finally address that standard, they propose only that the Franchise Agreement impliedly gave them two objectively reasonable expectations: that KFC "would act in accordance with its Guidelines" and would not "license a new outlet that would unduly impact [their] business[.]" Resp. Br. 26-27.

The argument is triply wrong. First, nothing in the Franchise Agreement can be read to give Plaintiffs either expectation. Second, even those expectations were met.   Third, Plaintiffs' criticisms represent, at most, second-guessing of KFC's business judgments, not evidence of a bad faith denial of implied contractual rights.

### 1.   The Franchise Agreement Created No Objectively Reasonable Contractual Expectation Of The Type Plaintiffs Claim.

Plaintiffs never argue that KFC breached any part of the Franchise Agreement. Their argument is that the implied covenant obligated KFC to "act in accordance with its Guidelines" and "not license a new outlet that would unduly impact" their location because the Agreement supposedly is "*silent* with respect to KFC's extra-1.5

mile radius rights." Resp. Br. 26-27, 36 (emphasis added). But the Franchise Agreement is anything but "silent" on that subject.

Section 3.6 of the Franchise Agreement provides Plaintiffs with a limited license to use KFC's trademarks within a 1.5-mile area, no more and no less. TX106 § 3.6 (App276). Section 19 of the Agreement then makes explicit that KFC may establish new restaurants more than 1.5 miles away, promising only that Plaintiffs will have a right of first offer if their restaurant is the closest existing location. *Id.* § 19 (App291-92). So, the Franchise Agreement is not "silent" with respect to a new restaurant 4.6 miles away; it unambiguously allows it.

As for whether there is any contractual expectation beyond those provisions, the Agreement unambiguously provides there is not. The Agreement stipulates that it alone "constitutes the entire understanding and agreement of the parties," "supersedes all prior and contemporaneous understandings," and disclaims as non-binding any other "statement [or] representation." *Id.* §§ 2, 20.5 (App274, 293). Plaintiffs agreed to those terms in June 2017, *after* the 2016 publication of the guidelines. *Id.* at 1 (App273); TX009-002.

Plaintiffs claim of "silence" ignores those provisions. Instead, they posit that in this *breach of contract case* "following the contract

5

is not particularly important to a determination of whether KFC acted in good faith[.]" Resp. Br. 44. That echoes the District Court's rulings, from the start of the case through the jury instructions, holding that whether KFC "compl[ied] with the terms of the contract" was not relevant to the implied covenant. *Daubert* Tr. 60:13-18 (App224); *accord* Dkt. 64 at 2-4 (App103-05); Dkt. 32 at 16 (App082). But Kentucky law is clear. There can be no breach of the implied covenant if "the defendant acts in accordance with the express terms of the contract." *Old Henry Healthcare Real Est., LLC v. Jewish Hosp. & St. Mary's Healthcare, Inc.*, No. 2019-CA-0832, 2021 WL 4343468, at *4 (Ky. Ct. App. Sept. 24, 2021). Nor can the implied covenant "add a condition which was not written into the original contract." *Jones v. Bank of Harlan*, No. 2015-CA-001833, 2017 WL 1829731, at *3 (Ky. Ct. App. May 5, 2017).[2] The implied covenant is merely a "gap filler

---

[2] Plaintiffs never mention *Old Henry.* They do try to distinguish *Jones* because that agreement addressed the loan terms, while the Agreement here is "silent" about new locations. Resp. Br. 31-32. But again, the Franchise Agreement is not silent, which also differentiates this case from *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1404 (11th Cir. 1998) (noting that contract "says nothing" about franchisor's ability to establish competing hotel and that language regarding possibility was deleted during drafting), and *In re Vylene Enterprises*, 90 F.3d 1472, 1476-77 (9th Cir. 1996) (same, as to competing restaurant).

to deal with circumstances not contemplated by the parties at the time of contracting." *E.g.*, *United States v. Basin Elec. Power Coop.*, 248 F.3d 781, 796 (8th Cir. 2001); *Ligon v. Parr*, 471 S.W.2d 1, 3 (Ky. 1971).[3]

Here, of course, the possibility of a new restaurant located more than 1.5 miles away *was contemplated* by the parties at the time of contracting, as the above provisions confirm. The implied covenant thus cannot create new, unwritten contractual rights and duties regarding that subject. That would be true even if the 1.5-mile license in Section 3.6 were the only operative term. As the Sixth Circuit explained in rejecting a similar claim, "[i]t does not follow that, because the franchise agreements prohibit [franchisor] from locating other franchises within the one-mile radius, [franchisor] cannot place other franchises outside this radius[.]" *Cook v. Little Caesar Enters.*, 210 F.3d 653, 658 (6th Cir. 2000); *accord Chang v. McDonald's Corp.*,

---

[3] Plaintiffs suggest Kentucky's embrace of the "gap filler" principle means it cannot follow the majority rule, for under that rule "there would never be a 'gap' to fill." Resp. Br. 34-35. This ignores the paradigmatic good-faith-and-fair-dealing claim—where a contract has a gap to fill because one party explicitly has discretion as to an aspect of its performance. 23 Williston on Contracts § 63.22. Plaintiffs cite such a case. Resp. Br. 25 (citing *Legend Autorama, Ltd. v. Audi of Am., Inc.*, 100 A.D.3d 714, 716 (N.Y. App. Div. 2012)).

105 F.3d 664, 1996 WL 742455, at *2 (9th Cir. 1996) (Table); *Handel's Enters., Inc. v. Schulenburg,* No. 18-CV-00508, 2020 WL 419158, at *12 (N.D. Ohio Jan. 27, 2020).

Plaintiffs try to distinguish these cases because they did not involve "guidelines for the determination of the impact." Resp. Br. 38-39. But non-contractual policies do not inform the implied covenant. *Buridi v. Branch Banking & Tr. Co.*, No. 12-cv-00486, 2015 WL 13039576, at *5 (W.D. Ky. July 14, 2015); *Payne v. McDonald's Corp.,* 957 F. Supp. 749, 756-59 (D. Md. 1997).[4] Indeed, Plaintiffs themselves insist the guidelines created expectations "*beyond* the protections of the Franchise Agreement." Resp. Br. 37 (emphasis added). That all but concedes that the expectations they identify had nothing to do with their Agreement with KFC.[5]

---

[4] Plaintiffs argue that neither *Buridi* nor *Payne* are on point because in the former the plaintiff "did not rely" on those policies and in the latter the court discussed the policies in the context of an express-breach claim before analyzing the implied covenant claim. Resp. Br. 38. Plaintiffs ignore, however, that key to both decisions was that implied covenant claims are governed by the "provision[s] *in the agreements.*" *Payne*, 957 F. Supp. at 758 (emphasis added).

[5] Plaintiffs complain that if the guidelines are not contractual, they are "meaningless." Resp. Br. 36. But corporate policies frequently are not enforceable as contracts, yet they are not "meaningless." KFC's guidelines were a statement of policy intended to help balance

### 2.   KFC Did Not Deprive Plaintiffs Of The Expectations They Claim To Have Had.

Even if the Franchise Agreement created the expectations Plaintiffs claim—that KFC would "act in accordance with its Guidelines" and "not license a new outlet that would unduly impact" their location, Resp. Br. 26-27—KFC did not violate those expectations.

*First*, Plaintiffs never argue that KFC breached the guidelines. That is because KFC did everything the guidelines described. Opening Br. 42-43. So, that argument goes nowhere.

*Second*, though Plaintiffs claim to have had an objectively reasonable expectation that KFC would "not license a new outlet that would unduly impact" the First Pueblo Restaurant, they do not say what that means. Resp. Br. 27. "Undue impact" necessarily implies some level of permissible impact, but Plaintiffs nowhere identify that level. If Plaintiffs are simply restating the guidelines—that KFC would not approve a new location without assessing the effect on an existing location and would avoid locations producing impact of more than

---

interests for KFC and its entire franchise system, not a contractual right vested in individual franchisees.

15%—KFC complied, as confirmed by KFC's extensive analysis of the Pueblo market and the impact study. *See* Opening Br. 42-46.

Plaintiffs' retort seems to be that KFC deprived them of their objectively reasonable expectations by retaining JAG to perform the impact study and through the "further review" process as a whole. Resp. Br. 4-16. But that retort does not withstand scrutiny.

Regarding JAG, Plaintiffs cannot claim the Franchise Agreement gave them an objectively reasonable expectation that KFC would not retain JAG, as JAG is one of two impact analysts KFC uses and was selected with input from the national association representing KFC franchisees. *See* Tr. 295:25-297:12. Nor can they claim the Franchise Agreement gave them an objectively reasonable expectation that JAG would not use the method it uses for all its analyses. Tr. 781:17-782:14. As for the *post-hoc*, *Daubert*-like criticisms Plaintiffs levy about JAG, Resp. Br. 4-8, 11-12, they reveal nothing about the parties' objectively reasonable expectations under the contract about whom KFC would retain and the methods that vendor would use.

Regarding the "further review" process, Plaintiffs complain that KFC considered "preliminary impact numbers" from JAG. *Id.* at 12-14. But Plaintiffs never explain how the Franchise Agreement gave

10

them an objectively reasonable expectation that KFC would not consider preliminary figures and, in all events, ignore both that the Second Pueblo Restaurant was not approved until after KFC received the final report and that the projection in that report was no different from the preliminary projection. Opening Br. 17-18.[6] Plaintiffs then complain they did not participate in the decision-making process and could not appeal. Resp. Br. 14-15. Again, they never explain how the Agreement gave them an objectively reasonable expectation as to these procedures. They certainly are not part of the guidelines.

### 3.   Plaintiffs Failed To Show That KFC Acted In Bad Faith.

Finally, even putting aside the lack of any objectively reasonable contractual expectation underlying Plaintiffs' theory, Plaintiffs failed to prove bad faith.

Plaintiffs first debate the meaning of bad faith. They insist it does not did mean they had to show KFC's "dishonesty" or "deceit." Resp.

---

[6] Plaintiffs falsely state that JAG preliminarily estimated a 22% impact. Resp. Br. 13-14. JAG's impact estimate never varied from 13.4%. The 22% figure was not an impact projection; it denoted the "position of convenience" for certain customers on the north side of Pueblo. *See* Opening Br. 48 n.10. This figure was one of several measurements that JAG used, per its standard analytical framework, to calculate sales impact. *See id.*

Br. 35. But while they make much of KFC's citation to a case involving an alleged breach of the implied covenant with respect to an insurance contract, *see Combs v. Int'l Ins. Co.*, 163 F. Supp. 2d 686, 696 (E.D. Ky. 2001), they do not establish that a different rule applies to other contracts and they ignore KFC's citation to a non-insurance case, *Pearman v. W. Point Nat'l Bank*, 887 S.W.2d 366 (Ky. Ct. App. 1994). But *Pearman* holds that the implied covenant requires a party to a contract to "act in a *bona fide* manner," meaning *inter alia* "without deceit or fraud." 887 S.W.2d at 368 & n.3 (quoting Black's Law Dictionary 177 (6th ed. 1990)).[7]

So, Plaintiffs simply are wrong about what it means to act with bad faith. They contest it, however, because they came nowhere close to showing that KFC acted with "dishonesty" or "deceit." But that is the bar they had to clear, given the deference Kentucky affords to business judgments like the one KFC reached here.

As KFC has shown, and Plaintiffs never deny, implied covenant claims fail as a matter of Kentucky law if they ask a jury to "second-

---

[7] The case Plaintiffs cite in response, *PBI Bank, Inc. v. Signature Point Condominiums LLC*, both did not discuss the meaning of bad faith and heavily relied on *Pearman*. 535 S.W.3d 700, 718-19 (Ky. Ct. App. 2016).

guess" a reasoned decision supported by "legitimate business concerns." *Rivermont Inn, Inc. v. Bass Hotels Resorts, Inc.*, 113 S.W.3d 636, 643 (Ky. Ct. App. 2003). Plaintiffs attempt to distinguish *Rivermont Inn* and similar cases on their facts, Resp. Br. 41-42, but they never rebut the critical point—under Kentucky law, a decision that is permitted by contract and made for a non-pretextual business reason is not bad faith, 113 S.W.3d at 643; *accord Allstate Ins. Co. v. Hamm*, No. 17-CV-00049, 2020 WL 1431953, at *13 (E.D. Ky. Mar. 23, 2020); *Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, Civ. A. No. 11-374, 2014 WL 2113096, at *9 (E.D. Ky. May 20, 2014).

Plaintiffs nowhere deny that KFC had non-pretextual business reasons for every decision they challenge. Their response consists mainly of the assertion that licensing a new restaurant that "render[s] [their] outlet unviable" or "potentially puts [it] out of business" must be bad faith. Resp. Br. 36, 40. But this resort to fact-free hyperbole proves KFC's point. It is undisputed that KFC *studied* whether the Pueblo market could support two profitable KFC locations, including by analyzing consumer data and the performance of KFC's competitors, providing ample business reasons for its decision. Opening Br. 46-47. Plaintiffs simply ignore that evidence.

13

That leaves only Plaintiffs' fixation on JAG. They theorize that KFC's retention of JAG deprived them of "a fair and reasonable impact determination." Resp. Br. 40. But the evidence was unrebutted that KFC had valid reasons to engage JAG. For sixteen years, JAG has performed impact studies for the largest franchise systems in the country *and* for some of the largest groups of *franchisees.* Tr. 731:1-2, 731:21-733:18. JAG also was one of two vendors mutually agreeable to NCAC and KFC. *See* Tr. 295:25-297:12. And, in all events, KFC made independent assessments of the market's ability to support two KFC restaurants, which corroborated JAG's findings. Opening Br. 13-18.

Moreover, though time and time again Plaintiffs insist that JAG should have done a better job, they identify no evidence that KFC *knew* of any supposed bias or flaw in JAG's work.[8] That is critical to

---

[8] KFC presented evidence that JAG's methods were sound and that Plaintiffs' reliance on FTI was misplaced because FTI proposed methods inconsistent with the scholarly consensus on study design. Tr. 377:15-24, 452:24-453:8 (FTI's lack of QSR experience); *id.* 822:2-823:18, 833:10-835:10 (independent expert criticizing FTI and approving JAG's "commercially reasonable," "very standard research approach"). Plaintiffs' experts also would not say that Plaintiffs' key criticisms of JAG affected JAG's projection. Tr. 406:14-411:23 (no opinion on "bilingual surveyor"); *id.* 412:10-17 (FTI saw no evidence that number of drive-through surveys had any effect on results).

14

any claim of bad faith. Yet regarding knowledge, Plaintiffs cite only the fact that JAG performed fifteen such studies for KFC and projected impacts of less than 15% in all of them. TX159. That is not enough. As KFC witnesses testified, this is evidence of efficacy, not dishonesty or deceit, as JAG only studies locations that KFC has *prescreened* for potential undue impact. Tr. 279:20-280:11.

At bottom, a disappointed franchisee always could argue that KFC should have considered other information, obtained another impact projection, or weighed competing interests differently. But Kentucky law does not allow a jury to "substitute [its] judgment for that of the franchisor which has articulated valid business reasons for its decision." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, No. 98-CI-003199, 2002 WL 33946402 (Ky. Cir. Ct. Feb. 14, 2002), *aff'd,* 113 S.W.3d 636 (Ky. Ct. App. 2003). Because Plaintiffs never rise above such prohibited second-guessing, their claim fails.

**B.    Kentucky Does Not Permit Standalone Claims For Breach Of The Implied Duty Of Good Faith And Fair Dealing.**

Because Plaintiffs' claim fails for the reasons outlined above, the Court need not resolve the disputed issue of whether Kentucky follows the majority rule. But if this pure question of law *were*

dispositive, the Court should either hold that Kentucky follows the majority rule or certify the question to the Kentucky Supreme Court.

The Kentucky Court of Appeals twice in the last seven years has held that Kentucky applies the majority rule. First, *J.S. v. Berla* affirmed summary judgment for a party alleged to have breached the implied covenant, explaining that a "violation of the good faith covenant alone does not give rise to an independent cause of action." 456 S.W.3d 19, 25-26 (Ky. Ct. App. 2015). Second, *Frakes v. Specialized Loan Services, LLC* affirmed dismissal of an implied covenant claim because "violation of the good faith covenant alone does not give rise to an independent cause of action." No. 2017-CA-000671, 2018 WL 1358023, at *2 (Ky. Ct. App. Mar. 16, 2018).

Plaintiffs want the Court to ignore these authorities. Regarding *J.S. v. Berla*, they imply the case did not involve a contractual claim. Resp. Br. 31. But that is not true. The claim there was "for breach of contract" and it failed because "violation of the good faith covenant alone does not give rise to an independent cause of action." *J.S.*, 456 S.W.3d at 25 & n.3. And while the court in *J.S.* did cite a case discussing the bad faith tort, that does not change that it applied the same principle to a contractual claim. As for *Frakes*, Plaintiffs say

16

nothing—they summarize its facts without addressing its holding. Resp. Br. 31.

Plaintiffs then try to distinguish *Burger King Corp. v. Weaver*, 169 F.3d 1310 (11th Cir. 1999), because the franchisor there "had not promulgated Guidelines[.]" Resp. Br. 32-33. But Plaintiffs never explain how that impacts the majority rule, which the Eleventh Circuit applied there. Plaintiffs also cite various non-Kentucky cases applying the minority rule, Resp. Br. 33, but those cases offer nothing regarding what law applies here and provide little insight as to the minority rule. That is because they either do not resolve whether the franchisor breached the implied covenant,[9] address irrelevant theories regarding pretext,[10] or were resolved for the

---

[9] *See* Order of Discontinuance, *Dunkin' Donuts Franchised Rests. LLC v. Grand Cent. Donuts, Inc.*, No. 07-cv-04027 (E.D.N.Y. Jan. 5, 2011), ECF No. 97 (dismissed pursuant to settlement); Order, *S. Implement Co. v. Deere & Co.*, No. 95-cv-00031 (E.D. Ark. Oct. 22, 1998), ECF No. 234 (after finding issue of material fact on implied covenant claim, dismissing claim pursuant to settlement).

[10] *See Mercedes-Benz, U.S.A. LLC v. Coast Auto. Grp., Ltd.*, Civ. A. No. 99-3121, 2006 WL 2830962, at *9 (D.N.J. Sept. 29, 2006) (genuine issue of material fact as to whether business reason for terminating franchise agreement was pretext for refusal to aid in price fixing scheme); *id.*, Order (D.N.J. Sept. 23, 2008), ECF No. 222 (judgment for franchisor).

franchisor.[11] The one exception is a California trial court decision in which a jury found a breach of the implied covenant, but only after the court invalidated as unconscionable a contractual provision allowing a franchisor to open competing restaurants "in the immediate vicinity of or adjacent to" plaintiff's restaurant. *Bryman v. El Pollo Loco, Inc.*, No. MC026045, 2018 Cal. Super. LEXIS 8135, at *2-3, *5, *46-51, *63-65, *109-18 (Cal. Super. Ct. Aug. 1, 2018). And that decision could not be cited even in California, both because it is unpublished, Cal. R. Ct. 8.1115(a), and because the appellate court reversed the judgment on stipulation with instructions to dismiss, *see* Order, *Handlers-Bryman v. El Pollo Loco*, No. B292585 (Cal. Ct. App. Sept. 2, 2020).

As for Plaintiffs' reliance on Kentucky caselaw, it consists of one 2016 Kentucky Court of Appeals case: *PBI Bank, Inc. v. Signature Point Condominiums LLC*, 535 S.W.3d 700 (Ky. Ct. App. 2016). But *PBI Bank* does not resolve the matter. The court there did state that to show a violation of the implied covenant, "a showing of breach of

---

[11] *See Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, 428 F. Supp. 2d 761, 775-76 (N.D. Ill. 2005) (judgment for franchisor for lack of evidence that business justification was pretext for discrimination).

contract is ordinarily not required." *Id.* at 718. But the Kentucky Supreme Court agreed to review that decision on discretionary review, although the appeal was dismissed before the Supreme Court could rule. *See* Mar. 15, 2017 Docket Entry, Order granting discretionary review in Supreme Court 2017-SC-7-D, *PBI Bank, Inc. v. Signature Point KTC, LLC*, No. 2013-CA-001874 (Ky. Ct. App.). Moreover, *PBI Bank* cited nothing for its embrace of the minority rule, other than the portion of Williston identifying the two competing approaches, *see* 535 S.W.3d at 718 (citing 23 Williston on Contracts § 63:22), ignored the contrary authority in *J.S. v. Berla*, and has never been cited by another Kentucky court for the proposition that Kentucky follows the minority rule. *J.S. v. Berla*, of course, was cited in *Frakes*, 2018 WL 1358023, at *2.[12]

Plaintiffs then reference federal authorities purporting to apply Kentucky law. Resp. Br. 20-23. Most of them, however, cite few or no Kentucky cases and predate *J.S. v. Berla*, *PBI Bank*, and *Frakes*.[13]

---

[12] Despite Plaintiffs' suggestion, Resp. Br. 20, Williston expresses no view as to the correct approach—it merely lists the approaches and notes the inconsistency.

[13] *Gresh v. Waste Servs. of Am., Inc.*, 311 F. App'x 766, 776 (6th Cir. 2009); *O'Kentucky Rose B. Ltd. P'ship v. Burns*, 147 F. App'x 451, 457-58 (6th Cir. 2005). Plaintiffs also cite several cases that do not

The others rely on those earlier authorities, ignore Kentucky caselaw, and are distinguishable. *Clubspecialists Intl. LLC v. Keeneland Ass'n*, No. 16-CV-345, 2017 WL 522945, at *4 (E.D. Ky. Feb. 8, 2017) (finding breach of implied covenant based on secret payments to third-party in contravention of contract); *Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop. Corp.*, No. 15-CV-45, 2015 WL 4464105, at *4 (W.D. Ky. July 21, 2015) (denying motion to dismiss implied covenant claim based on allegedly unreasonable exercise of discretionary authority expressly granted by contract to set rates).

In sum, the Kentucky Supreme Court has never addressed whether Kentucky follows the majority or minority rule. At least two Kentucky Court of Appeals decisions hold that Kentucky applies the majority rule. *J.S.*, 456 S.W.3d at 25-26; *Frakes*, 2018 WL 1358023, at *2. To the extent the tepid decision in *PBI Bank* creates a split on that issue, the Court should certify the question of whether Kentucky recognizes standalone claims for breach of the implied covenant to the Kentucky Supreme Court.

---

mention the implied covenant, let alone discuss what rule Kentucky applies. *Estate of Riddle ex rel. Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 402-03 (6th Cir. 2005); *Yates v. Bankers Life & Cas. Ins. Co.*, 720 F. Supp. 2d 809, 812-13 (W.D. Ky. 2010).

**C.    The Jury Instructions Misstate Kentucky Law Regarding The Implied Covenant.**

Finally, as KFC showed in its Opening Brief at 49-52, the instructions to the jury regarding the meaning of good faith and fair dealing omitted three critical points: (1) "[a]cting according to the terms of a contract is not a violation of the implied covenant"; (2) "[b]ad faith is characterized by … acting without legitimate business reasons"; and (3) Plaintiffs had the burden of showing "that KFC acted with deliberate and conscious bad faith."

*First*, Plaintiffs argue that the jury did not need to be instructed that adherence to a contract forecloses a claim under the implied covenant because Kentucky follows the minority rule and the Franchise Agreement "is *silent* with respect to KFC's licensing new outlets." Resp. Br. 44. As discussed above, all of that is wrong.

*Second*, Plaintiffs argue that an instruction regarding the legitimate business reason defense "would not have added anything" because it "begs the question of what is 'legitimate.'" *Id.* Again, as discussed above, this was a critical point, as Plaintiffs could not establish bad faith given KFC's non-pretextual business reasons for licensing the Second Pueblo Restaurant.

21

*Third*, Plaintiffs insist they did not have to show "deliberate and conscious" bad faith. Resp. Br. 43. As discussed, that too is wrong.

In short, the erroneous omissions from the instructions stripped KFC of potent legal defenses. At a minimum, KFC should receive a new trial before a properly instructed jury.

## II.   The District Court Awarded Damages For Lost Profits That Were Unsupported And Excessive.

The Court need not reach any of the remaining issues. Either it should hold that Plaintiffs' claim fails as a matter of law or it should certify the question regarding the standard applicable to implied covenant claims to the Kentucky Supreme Court. Nonetheless, out of an abundance of caution, KFC has appealed two additional issues.

### A.   Plaintiffs Misstate The Kentucky Standard For Future Lost Profits And Fail To Identify Evidence To Support Those Damages.

The Kentucky standard governing future lost profits requires Plaintiffs to establish such an award with "reasonable certainty." *Insight Ky. Partners II, L.P. v. Preferred Auto. Servs., Inc.,* 514 S.W.3d 537, 553 (Ky. Ct. App. 2016). Plaintiffs claim they need only show "the *fact* of lost profits with reasonable certainty," not *the amount.* Resp. Br. 45. In other words, Plaintiffs' position is that proof that it

is reasonably certain they will lose one cent in future lost profits suffices to allow a jury to award whatever damages it may, no matter how haphazard. That is not the law in Kentucky.

It is true that future lost profits may be awarded if a plaintiff presents something less than "exact calculations"—that is inherent in calculating future losses. But there still must be an "evidentiary basis from which the jury could have reasonably estimated" those losses. *Babcock Power, Inc. v. Kapsalis*, 854 F. App'x 1, 6 (6th Cir. 2021); *accord Ill. Valley Asphalt, Inc. v. Harry Berry, Inc.*, 578 S.W.2d 244, 246 (Ky. 1979) ("There must be ... sufficient evidence [to support] a reasonable inference as to the *amount* of [lost profits.]"). *Curry v. Bennett* does not say otherwise, as the plaintiff there—who claimed defendants diminished the value of a certain colt—presented painstaking evidence of the *amount* of his lost profits, including by introducing the values of other horses with "comparable lineages." 301 S.W.3d 502, 506-07 (Ky. Ct. App. 2009). Kentucky requires such evidence so juries have "a basis for measuring or computing damages with reasonable certainty." *Babcock Power*, 854 F. App'x at 6.

Plaintiffs argue over the standard because they did not meet it. Plaintiffs framed their lost profits as a multiplication problem: they

23

asked the jury to conclude the Second Pueblo Restaurant would impact Plaintiffs' future profits by a certain *amount* (specifically, 26%), which the jury should multiply by a *duration* of however many years that effect would continue (Plaintiffs presented options ranging from one to ten years). Resp. Br. 46-47; TX150 at 9-11. Given that framing, Plaintiffs had to adduce evidence sufficient for the jury to ascertain, with reasonable certainty, *both*: (i) the amount the Second Pueblo Restaurant would affect the First Pueblo Restaurant; *and* (ii) the duration that effect would continue. Plaintiffs established *neither*.

*First*, none of the evidence provided a basis to calculate the *amount* the new restaurant would impact the incumbent's profits. Plaintiffs protest that the jury heard that the First Pueblo Restaurant saw diminished sales in the months following the new store's opening. Resp. Br. 46. But nothing in that evidence "afford[ed] a basis for measuring" the *amount* of lost profits for any period of time, let alone with "reasonable certainty" through 2026. TX150 at 9-11. Plaintiffs' expert Mr. Weil could have offered testimony (though deeply flawed) that the new store would depress Plaintiffs' sales by 26%. But Plaintiffs elected not to present him at trial and Mr. Opp

24

made clear he could not support either Mr. Weil's 26% projection or any other amount.[14]

Plaintiffs then argue that KFC stipulated at trial to "permit[] [Plaintiffs] to request the jury award Plaintiffs damages consistent with [Mr.] Opp['s] Opinions." Resp. Br. 47 (citing Dkt. 93). But KFC stipulated only to the admissibility of Mr. Opp's opinions, which were computations, not that Mr. Opp's opinions were *sufficient evidence* to support a particular judgment alone. The stipulation reserved KFC's ability to establish they were not sufficient by "cross examin[ing] Mr. Opp within the Federal Rules of Evidence." Dkt. 93. The stipulation in no way relieved Plaintiffs of their burden to "prove[] [damages] with reasonable certainty." *Middleton v. PNC Bank, NA*, No. 2012-CA-002142, 2014 WL 5510872, at *5 (Ky. Ct. App. Oct. 31, 2014).

*Second*, Plaintiffs provided no evidence as to the duration of any lost profits. Plaintiffs now try to backfill, noting their store had been in business for many years; Mr. Kazi believed the Second Pueblo Restaurant would "hurt" his sales; and testimony that the effect of a

---

[14] Plaintiffs suggest that Mr. Opp could have relied on FTI's calculation that the Second Pueblo Restaurant might have impacted Plaintiffs by 33%. Resp. Br. 47 n.8. But Mr. Opp did not so rely, and he offered no opinion on any of FTI's purported calculations.

new restaurant on an incumbent lessens over time. Resp. Br. 48-49. None of that provides *any* basis to even estimate the duration of the Second Pueblo Restaurant's effects on the First Pueblo Restaurant. Plaintiffs themselves make this clear when they argue the jury could reasonably *assume* that if customers (sales) were lost to the New Outlet, those sales would continue to be lost into the future to "*varying degrees over a period of time.*" *Id.* 49 (emphasis added). In other words, the jury was left to "speculat[e] and guess[]" as to damages—which Kentucky prohibits. *Louisville & N.R. Co. v. Lankford*, 200 S.W.2d 297, 298 (Ky. Ct. App. 1947).

## B.   Plaintiffs Are Not Entitled To A Windfall.

Plaintiffs agree, assuming a breach of the implied covenant occurred, they may only be returned to the position they would have been in absent the breach. Resp. Br. 50. Yet they claim the guidelines, which they hold out as the "evidence" of their purported contractual expectations, cannot be used to define those expectations. Plaintiffs thus seek to avoid the necessary implication of their liability argument—they want to enforce a 15% impact threshold to define a "breach," but they want to ignore the same threshold to measure their supposed injury.

To be clear, although Plaintiffs accuse KFC of inconsistency, KFC's position is that Plaintiffs had no objectively reasonable *contractual* expectation with respect to the guidelines. But if the Court disagrees, Plaintiffs cannot pick and choose when the guidelines apply. Under the guidelines, the only expectation Plaintiffs can claim is that the First Pueblo Restaurant would be protected from sales impacts *greater than* 15%. Damages awarded for sales impact lower than 15%, as under the Opp model, are windfall.

Plaintiffs only other response is to suggest the damages award is immune to judicial adjustment. But Plaintiffs put too much weight on the general proposition that damages are an issue "for the jury." Resp. Br. 49. No authority renders jury awards *de facto* unreviewable nor insulates awards that are improper as a matter of law because they emanated from the deliberation room. To the contrary, Kentucky law requires reversal of improper windfalls. *E.g.*, *Advanta USA, Inc. v. Farmers Fertilizer Co.*, No. 2005-CA-000662, 2006 WL 1561489, at *3 (Ky. Ct. App. June 9, 2006) (reversing where jury failed to limit lost profits award); *see Protectors Ins. Serv., Inc. v. U.S. Fid. & Guar. Co.*, 132 F.3d 612, 617-18 (10th Cir. 1998) (vacating lost profits award that constituted a windfall); *Robert R. Jones Assocs., Inc. v. Nino*

27

*Homes*, 858 F.2d 274, 281 (6th Cir. 1988) (reversing award compensating plaintiff beyond what statutory scheme permitted).

## III. Commentary By The District Court Unfairly Prejudiced KFC.

With respect to the District Court's comments about counsel's personal tragedy and KFC's mistrial motion, Plaintiffs first misstate the standard. They insist KFC must show the District Court made statements "*intended or calculated* to disparage KFC in the eyes of the jury or to prevent the jury from exercising its impartial judgment upon the merits." Resp. Br. 53. That is not the law, and the case Plaintiffs cite says so. In *Hayes v. SkyWest Airlines, Inc.*, the Court observed only that it "*should be slow*" to reverse "unless" there is evidence that the lower court "intended or calculated [its statements] to disparage" one side. 12 F.4th 1186, 1195 (10th Cir. 2021) (emphasis added). That does not foreclose that the Court may reverse the denial of a motion for mistrial if it is sufficiently clear that a judge's behavior prejudiced one side. *Id.* (noting that this Court must "not serve as a rubber stamp" for such a denial and must "mark and guard the outer boundaries of acceptable trial conduct").

Plaintiffs then suggest that any prejudice to KFC was cured when the trial judge "admonished" the jury that "KFC can't be prejudiced in any way by that." Resp. Br. 53 (quoting Tr. 274:6-7 (App239)) (emphasis omitted). But Plaintiffs ignore the rest of that "admonishment," when the trial court proceeded to "tell [the jury] the whole story" and expand upon counsel's personal tragedy and how counsel put it aside for the benefit of his client. Opening Br. 62-63 (quoting Tr. 273:10-274:9 (App238-39)). This purported curative instruction, even more than the initial comment, prejudiced KFC.

Finally, Plaintiffs insist that comments by the District Court made outside the jury's presence are irrelevant to the prejudice analysis. They again are wrong—though KFC's argument does not depend on the District Court's commentary outside the presence of the jury, Plaintiffs offer no response to KFC's case law demonstrating that the appellate courts must consider *all* remarks by the trial judge, which may "reveal [his] feelings throughout the trial." Opening Br. 57-58 (quoting *United States v. Bland,* 697 F.2d 262, 265-66 (8th Cir.

1983)); *accord Hayes*, 12 F.4th at 1195 ("the context of *the entire record*" must be considered) (emphasis added).[15]

The record makes plain what happened here. The District Court made comments about counsel's personal tragedy that prompted an emotional reaction in the courtroom; the Court became angry when KFC's counsel objected; and the Court compounded the prejudice to KFC by returning to the topic with the jury and providing additional details about counsel's personal tragedy and perseverance. In fact, the next morning, the District Court again remarked unbidden on the subject of spouses as trial spectators, recalling the emotional topic before the jury. Tr. 430:11-431:1.

The question is not whether the District Court's intent was malicious, it is whether those remarks, viewed in context of the entire record, could have led the jury to conclude that the judge favored Plaintiffs' position. *Newman v. A. E. Staley Mfg. Co.,* 648 F.2d 330,

---

[15] Plaintiffs suggest that the judge "assisted" KFC by "correcting" counsel's pronunciation of "Pueblo" outside the presence of the jury. Resp. Br. 53 n.10. Plaintiffs fail to mention that the judge also took issue with KFC's counsel's pronunciation *before* the jury. Tr. 181:8-9. Nor is this a mitigating explanation for the many negative remarks made before the jury concerning KFC's counsel following the mistrial motion. Opening Br. 64 n.13.

336 (5th Cir. 1981). Because the answer to that question is yes, the Court should reverse.

## CONCLUSION

For the foregoing reasons and those identified in its Opening Brief, Defendant-Appellant KFC US, LLC respectfully requests that the Court reverse the judgment entered by the District Court.

Date:       July 27, 2022          Respectfully submitted,

*/s/ Daniel J. Weiss*
Daniel J. Weiss
Clifford W. Berlow
Daniel W. Bobier
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
Telephone: (312) 923-4517
dweiss@jenner.com
cberlow@jenner.com
dbobier@jenner.com

*Attorneys for Defendant-Appellant KFC US, LLC*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS**

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and (6) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    [X]  this document contains 6,431 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [X]  this document has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 14-point Bookman Old Style for the main text and footnotes.

Date:  July 27, 2022             /s/ Daniel J. Weiss
                                 Daniel J. Weiss
                                 Attorney for *Defendant-Appellant*
                                 *KFC US, LLC*
                                 JENNER & BLOCK LLP
                                 353 N. Clark St.
                                 Chicago, Illinois 60654
                                 Telephone: (312) 923-4517
                                 dweiss@jenner.com